UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHANICE LOWERY,

                Plaintiff,        Civil Action No. 17-12348
                                       Honorable Thomas L. Ludington
                                       Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.

_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [12, 14]**

Plaintiff Shanice Lowery ("Lowery") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (Docs. #12, 14), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.     RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Lowery is not disabled under the Act. Accordingly, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #14**) be **GRANTED**, Lowery's Motion for Summary Judgment (**Doc. #12**) be **DENIED**, and that pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

**II.     REPORT**

    **A.     Background**

Lowery filed prior applications for DIB and SSI on October 18, 2012. (Tr. 125). On May 9, 2014, ALJ Janet Alaga-Gadigian issued a written decision denying those applications. (Tr. 125-32). On November 28, 2014, the Appeals Council denied review. (Tr. 136-41).

Lowery then filed new applications for DIB and SSI on January 20, 2015, alleging disability as of November 1, 2010. (Tr. 225-30). At the time of that alleged onset date, Lowery was 29 years old. (Tr. 244). She had completed high school but had no further education. (Tr. 61, 249). Lowery has prior work history as a hostess, cashier, and driver, but she stopped working in February 2014 because of her medical conditions. (Tr. 248-49). She alleges disability primarily as a result of chronic migraine headaches, back and neck pain, fibromyalgia, carpal tunnel syndrome, anxiety, and depression. (Tr. 62, 248).

After Lowery's January 2015 applications for SSI and DIB were denied at the initial level on April 16, 2015 (Tr. 170-73, 180-83), she timely requested an administrative hearing, which was held on September 9, 2016, before ALJ Dawn Gruenburg (Tr. 54-78). Lowery, who waived her right to attorney representation, testified at the hearing, as did vocational expert Erin O'Callaghan. (*Id.*). On November 23, 2016, the ALJ issued a written decision finding that Lowery is not disabled under the Act. (Tr. 13-21). On June 30, 2017, the Appeals Council denied review. (Tr. 1-6). Lowery timely filed for judicial review of the final decision on July 19, 2017. (Doc. #1).

The Court has thoroughly reviewed the transcript in this matter, including Lowery's medical record, Function and Disability Reports, and testimony as to her conditions and resulting limitations. Instead of summarizing that information here, the Court will make references and

provide citations to the transcript as necessary in its discussion of the parties' arguments.

### B. The ALJ's Application of the Disability Framework Analysis

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis

3

reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Lowery is not disabled under the Act. At Step One, the ALJ found that Lowery has not engaged in substantial gainful activity since November 1, 2010 (the alleged onset date). (Tr. 15). At Step Two, the ALJ found that she has the severe impairments of headaches, dysfunction of the spine, dysfunction of major joints, asthma, fibromyalgia, hypertension, obesity, and carpal tunnel syndrome. (*Id.*). At Step Three, the ALJ found that Lowery's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 17).

The ALJ then assessed Lowery's residual functional capacity ("RFC"), concluding that she is capable of performing sedentary work, with the following additional limitations: must have the ability to alternate between sitting and standing at fifteen minute intervals; only occasional balancing, stooping, kneeling, crouching, crawling, and climbing of stairs; no climbing of ladders; must avoid concentrated exposure to wetness, humidity, noise, vibration, fumes, odors, dust, gases, poor ventilation, and all hazards; must avoid sunlight at the worksite; and restricted to only frequent fingering and handling. (*Id.*).

At Step Four, the ALJ found that Lowery is not capable of performing her past relevant work. (Tr. 20). At Step Five, the ALJ determined, based in part on testimony provided by the vocational expert ("VE") in response to hypothetical questions, that Lowery is capable of performing the jobs of sorter (120,000 jobs nationally) and bench assembler (240,000 jobs). (Tr. 20-21). As a result, the ALJ concluded that Lowery is not disabled under the Act. (Tr. 21).

**C.     Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative

decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole.  *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ.  *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).  There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."  *Cutlip v.*

*Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

  **D.**  **Analysis**

  In her motion for summary judgment, Lowery raises two arguments: (1) that the ALJ erred in formulating her RFC; and (2) that the VE's testimony does not constitute substantial evidence supporting the ALJ's Step Five finding that she can perform work that exists in significant numbers in the national economy. (Doc. #12 at 8-10). Each of these arguments is addressed below.

    *1.*  *Substantial Evidence Supports the ALJ's RFC Finding*

  As set forth above, the ALJ evaluated the evidence of record and concluded that Lowery retains the RFC to perform a limited range of sedentary work. (Tr. 17). In assessing this RFC, the ALJ gave "great weight" to the opinions of the state agency reviewing psychologist, James Tripp, Ed.D., who found that Lowery does not have a severe mental impairment (Tr. 19, 147-48, 159-60), and reviewing physician Dale Blum, M.D., who opined that Lowery has the physical capacity to perform sedentary work with additional postural and environmental limitations (Tr. 19, 149-51, 161-63). In this case, where the record did not contain any opinions from treating or examining medical sources as to the extent of Lowery's work-related functional limitations, the ALJ properly relied on the opinions of these state agency reviewing medical experts in assessing Lowery's RFC. *See, e.g., Al-Saidie v. Comm'r of Soc. Sec.*, 2017 WL 3633126, at *6 (E.D. Mich. Feb. 24, 2017) ("Absent functional assessments from treating doctors, RFC assessments from medical reviewers is the best evidence of plaintiff's abilities and limitations."); *Johnson v. Comm'r of Soc. Sec.*, 2013 WL 812081, at *6 (E.D. Mich. Feb. 12, 2013) ("[T]he record does not include an opinion from a treating source, or an examining source, indicating that Plaintiff is disabled, or identifying limitations greater than those found by the state agency consultant. Without a differing opinion, the ALJ was entitled to rely on the findings of the state agency

consultant."). Thus, the ALJ's reliance on the opinions of the state agency reviewing medical experts, their opinions constitute substantial evidence supporting the ALJ's RFC assessment.

In her motion, Lowery raises two specific challenges to the ALJ's RFC assessment, arguing that it fails to account for her chronic fatigue and pain, as well as her need for a cane. (Doc. #12 at 8). For the reasons set forth below, the Court is not persuaded by these arguments.

### a. *The RFC Adequately Accounts for Lowery's Pain and Fatigue*

To begin with, Lowery argues that the ALJ's RFC finding "failed to address [her] chronic fatigue and her chronic pain …." (Doc. #12 at 8). As discussed above, however, the ALJ found that Lowery is capable of only a reduced range of sedentary work (Tr. 17), which, according to the applicable regulations, necessarily means she has "very serious functional limitations." 20 C.F.R. § Part 404, Subpart P, Appendix 2 § 201.00(h)(4). Clearly, then, the ALJ did not overlook or fail to address Lowery's fatigue and pain, as Lowery asserts, but rather found that these complaints supported the "very serious functional limitations" indicated by a restriction to sedentary work, along with numerous other exertional and non-exertional limitations. (Tr. 17).

Although not phrased as such, Lowery's assertion that the ALJ "failed to address [her] chronic fatigue and her chronic pain" (Doc. #12 at 8) appears to be a challenge to the ALJ's evaluation of her subjective complaints in these respects. The Sixth Circuit has held that determinations of credibility rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981) (quoting *Beavers v. Sec'y of Health, Ed. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ is not simply required to accept the testimony of a claimant if it conflicts with

medical reports and other evidence in the record. *See Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997). Rather, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, she must consider "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record" to determine if the claimant's claims regarding the severity of her symptoms are credible. *Social Security Ruling ("SSR") 16-3p*, 2016 WL 1119029, at *4 (Mar. 16, 2016).

In evaluating Lowery's statements regarding the intensity, persistence, and limiting effects of her symptoms – including pain and fatigue – the ALJ appropriately considered the longitudinal medical record as a whole, referencing the "paucity of clinical deficits noted in the treatment records and examination reports [and] her course of treatment." (Tr. 19). For example, the ALJ noted that, in December 2015, Lowery presented to the emergency room with chest pain and hypertension; however, chest x-rays and blood work were entirely unremarkable. (Tr. 18, 466-67). Similarly, Lowery returned to the emergency room in May 2016 with chest pain and shortness of breath, but chest x-rays revealed no active disease. (Tr. 437, 444). The ALJ also noted that although Lowery was treated for low back pain and headaches, the objective medical evidence revealed consistently unremarkable findings in these respects too. (Tr. 18, 328 (May 13, 2014 cervical spine MRI showed no significant disc abnormality), 334-36 (April 18, 2014 MRI and CT scan of the brain revealed no acute process), 342 (May 13, 2014 lumbar spine MRI was "[e]ssentially unremarkable"), 633-34 (August 3, 2015 lumbar spine x-rays were unremarkable), 635 (August 3, 2015 x-rays of sacroiliac joints revealed normal findings)).

In addition to the medical evidence of record, the ALJ also properly considered Lowery's activities of daily living in evaluating her subjective complaints of fatigue and pain, noting that she is able to handle all of her self-care requirements, prepare simple meals, drive, perform light household chores, attend church services, and visit with family members. (Tr. 16, 19). Lowery does not allege error in the ALJ's consideration of her daily activities, and it was entirely appropriate for the ALJ to consider them in evaluating her allegations of disabling symptoms. *See Cole v. Comm'r of Soc. Sec.*, 2016 WL 5334593, at *6 (W.D. Mich. Sept. 23, 2016) (finding that activities such as cleaning, cooking, making beds, fixing things "at her own pace" "are not indicative of an invalid, incapable of performing work related activities"); *Daniels v. Comm'r of Soc. Sec.*, 2018 WL 1535396, at *5 (E.D. Mich. Mar. 29, 2018) (ALJ may properly consider claimant's daily activities as one factor in assessing the credibility of his subjective complaints).

In sum, in evaluating Lowery's subjective complaints and the effects of her impairments, the ALJ fairly and properly considered the record evidence, including Lowery's medical records, course of treatment, and activities of daily living. The Court finds no reason to disturb the ALJ's evaluation of Lowery's subjective complaints because the ALJ observed Lowery firsthand, and her assessment is supported by substantial evidence in the record. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) ("[A]n ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability.").

> b.   *The ALJ Did Not Err in Failing to Incorporate Lowery's Use of a Cane into Her RFC Findings*

Lowery also argues that the ALJ's RFC findings are inadequate because they fail to account for her use of a prescribed cane "for ambulation and for stability." (Doc. #12 at 8). It is true that Jamie Hall, M.D. prescribed Lowery a cane on May 8, 2014, in connection with a

9

diagnosis of lumbago, to use "while walking, everyday, as needed." (Tr. 419). But, Lowery fails to recognize that the relevant Social Security Ruling provides as follows:

> Since most unskilled sedentary work requires only occasional lifting and carrying of light objects such as ledgers and files and a maximum lifting capacity for only 10 pounds, an individual who uses a medically required hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations with the other hand.

*Soc. Sec. Rul. 96-9p*, 1996 WL 374185, at *7 (July 2, 1996). Indeed, the Sixth Circuit has explicitly noted that the use of a cane is not inconsistent with the ability to perform the full range of sedentary work. *See Gaffney v. Bowen*, 825 F.2d 98, 101-02 (6th Cir. 1987).

Here, it is clear that the ALJ did not overlook Lowery's use of a cane, as she explicitly acknowledged Lowery's hearing testimony that she had "been using a cane for two years." (Tr. 18). However, as explained above, the ALJ properly relied on the only acceptable medical source opinion in the record – that of state agency physician Dr. Blum – who reviewed the evidence of Lowery's treatment with Dr. Hall, and assessed an RFC that did not explicitly include the use of a cane. (Tr. 19, 145, 149-51, 157, 161-63). Thus, Lowery has not identified any error in the ALJ's assessment of her RFC.[1]

### 2. The VE's Testimony Provided Substantial Evidence for the ALJ's Step Five Findings

As set forth above, at Step Five of the sequential analysis, the ALJ determined, based in part on the VE's testimony in response to hypothetical questions, that Lowery is capable of performing the jobs of sorter and bench assembler. (Tr. 20-21). In her motion, Lowery argues

---

[1] Moreover, even if the ALJ had erred in failing to incorporate Lowery's use of a cane into her RFC findings, any such error is harmless where the VE testified that 60,000 sorter jobs could still be performed by a hypothetical individual with such restrictions, *infra* at 10-11

that this was error, as she challenges the VE's testimony that she can perform these jobs on three separate bases. (Doc. #12 at 8-10).

First, Lowery argues that the VE's testimony as to the number of available jobs could have changed had the ALJ included the need for a cane in the hypotheticals. (*Id.* at 8). But Lowery is simply incorrect. Although the ALJ did not ultimately include the need for a cane in her RFC assessment, she did add it to her hypothetical after the VE initially identified the sorter and bench assembler jobs as existing in significant numbers in the national economy. (Tr. 74-75). And, upon questioning by the ALJ, the VE testified that while the use of a cane would eliminate the bench assembler job, the number of sorter jobs would only be reduced, rather than eliminated, from 120,000 to 60,000. (*Id.*). This is more than enough to constitute a significant number of jobs at Step Five. *See, e.g., Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) (upholding ALJ's determination that two occupations accounting for 200 positions in the claimant's home state and 6,000 jobs nationally constituted "significant numbers") (citing cases).

Lowery next argues that the "sorter" position identified by the VE "would have odors and dust within the workplace" and "would include significant dust and fumes," both of which were to be avoided in the hypothetical. (Doc. #12 at 8, 9). As Lowery correctly points out, the Dictionary of Occupational Titles ("DOT") listing the VE provided for the sorter position corresponds to the job of "Nut Sorter." *See* DOT Listing #521.687-086, *Nut Sorter*, 1991 WL 674226 (Jan. 1, 2016) (describing this job in the canning and preserving industry as involving the inspection and sorting of nut meats). But, beyond simply speculating that this job would include odors, dust, and fumes, Lowery does nothing more than ask the Court to second-guess the VE's expertise. Indeed, having presented the VE with a hypothetical that specifically included the

11

need to "avoid concentrated exposure to … fumes, odors, dust, gasses, [and] poor ventilation" (Tr. 74), the ALJ could reasonably rely on the VE's responsive testimony identifying jobs that accommodated that need.[2] *See Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 436-37 (6th Cir. 2014) (VE's testimony may be relied on at Step Five in response to a hypothetical question that accurately portrays the claimant's impairments).

Finally, Lowery argues that the ALJ erred in relying on the VE's testimony because both jobs the VE identified "are jobs that require *constant* use of the hands as they are sorting and assembling" and the ALJ limited her to only frequent fingering and handling.  (Doc. #12 at 9 (emphasis added)).  Here again, however, Lowery is simply asking the Court to second-guess the VE's expertise, as well as to make findings that clearly contradict the information contained in the DOT.  Specifically, the DOT describes the Nut Sorter job as requiring both handling and fingering "Frequently – Exists from 1/3 to 2/3 of the time."  1991 WL 674226.  The handling and fingering requirements of the bench assembler job are the same.  *See* DOT Listing #713.687-018, *Final Assembler*, 1991 WL 679271 (Jan. 1, 2016).  Thus, these jobs are consistent with the assessed RFC, and Lowery has identified no error.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

### III.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #14**) be **GRANTED**, Lowery's Motion for Summary Judgment

---

[2] Moreover, the VE's testimony is in fact consistent with the DOT listing for the Nut Sorter job, which states that numerous environmental conditions, including extreme cold, extreme heat, wetness and/or humidity, vibration, atmospheric conditions, moving mechanical parts, electric shock, high exposed places, radiation, explosives, toxic caustic chemicals and "Other Env[ironmental] Cond[itions]" – presumably including odors, dusts, and fumes – are all "Not Present – Activity or condition does not exist."  1991 WL 674226.

(**Doc. #12**) be **DENIED**, and the ALJ's decision be **AFFIRMED**.

Dated: May 29, 2018            s/David R. Grand
Ann Arbor, Michigan           DAVID R. GRAND
                                                         United States Magistrate Judge

## **NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 29, 2018.

                                      s/Eddrey O. Butts
                                      EDDREY O. BUTTS
                                      Case Manager